291 F.2d 124
 Roy D. PAVLIK, Sr. and Herman G. Lorenz, and Hartford
Accident and Indemnity Company, a corporation,
Plaintiffs-Appellants,
v.
ST. PAUL MERCURY INSURANCE COMPANY, a corporation, Defendant-Appellee.
 No. 13236.
 United States Court of Appeals Seventh Circuit.
 June 9, 1961.
 
 Thomas J. Weithers, Chicago, Ill., Joseph H. Hinshaw, John M. Moelmann, Oswell G. Treadway, Chicago, Ill., for appellants.
 Charles D. Snewind, Chicago, Ill., Albert M. Howard, Chicago, Ill., for appellee.
 Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.
 KNOCH, Circuit Judge.
 
 
 1
 Plaintiffs brought this action against defendant for a declaratory judgment that plaintiffs Roy D. Pavlik, Sr. and Herman G. Lorenz were entitled to coverage under an automobile insurance policy issued by defendant St. Paul Mercury Insurance Company (hereinafter called 'St. Paul)' to O'Laughlin Redi-Mix Concrete Company (herinafter called 'O'Laughlin') with respect to injuries incurred by Ray Shields, an employee of Raymond Concrete Pile Company (hereinafter called 'Raymond'). The District Court entered judgment in favor of St. Paul and this appeal followed.
 
 
 2
 The facts are substantiall undisputed. On January 24, 1958, the date of the accident which resulted in injury to Mr. Shields, his employer Raymond was engaged in construction work on a toll road in Illinois. Raymond had leased a dragline and crane from Mr. Pavlik and Mr. Lorenz, who were operating it at the site of construction. This equipment was covered by insurance issued by plaintiff Hartford Accident and Indemnity Company. At about 4:30 P.M. on January 24, 1958, a truck owned by O'Laughlin and insured by St. Paul, delivered a load of concrete which was mixed in the truck for use at the site of construction. The O'Laughlin truck carried a large metal mixing drum and a supply of water which was carried to the drum by a hose attached to the truck. When the concrete had been mixed, it was taken from the drum through a collapsible chute, also attached to the truck. The O'Laughlin truck and its mixing apparatus were all operated by Robert Earl Wendt, a driver for O'Laughlin. The dragline and crane owned and operated by Mr. Pavlik and Mr. Lorenz, were used to unload the mixed concrete, to carry it some distance away and to deposit it on a piling which was a form a permanent part of the bridge under construction. Mr. Shields stood at the rear of the O'Laughlin truck to guide the bucket of the dragline under the chute through which the mixed concrete passed.
 
 
 3
 After all the concrete had been removed from the O'Laughlin truck, and while the last of the mixed concrete was being taken by the dragline to its place in the construction, Mr. Wendt washed out the mixing drum with the water from the hose, folded the collapsible chute into its inoperative position, and moved the truck away a few feet from the site of the unloading. By this time all the concrete had been deposited in its permanent place in the construction. The dragline bucket was then brought back to the truck. Mr. Shields reached for the truck's water hose to clean out the bucket. Mr. Shields testified that it was a customary part of the concrete pouring operating to wash out the bucket on the dragline at the end of the day's operations. However, Mr. Wendt, the driver of the truck, testified that it was not customary. The bucket struck Mr. Shield's hand. He brought suit against Mr. Pavlik and Mr. Lorenz, who called on St. Paul to defend the action on the ground that they were using the O'Laughlin truck and were also engaged in unloading it at the time of the accident, within the provisions of St. Paul's policy on the O'Laughlin truck.
 
 
 4
 The pertinent provisions of the policy on which the plaintiffs rely are as follows:
 
 
 5
 'III. Definition of 'Insured'. The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *'.
 
 
 6
 An owned automobile is defined as one 'owned by the named insured,' in this case O'Laughlin. The policy further provides that St. Paul will:
 
 
 7
 'Pay on behalf of the insured all sums that the insured shall become legally obligated to pay as damages because of bodily injuries, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accidents and arising out of the ownership, maintenance or use of any automobile * * *'
 
 
 8
 and that:
 
 
 9
 'Use of any automobile includes the loading or unloading thereof * * *'.
 
 
 10
 There is no universally accepted doctrine construing 'omnibus' and 'loading and unloading' clauses such as are here involved. Some courts have adopted the 'coming to rest' doctrine; others the 'complete operation' doctrine.
 
 
 11
 Where goods have been taken from the insured vehicle, have actually come to rest, and all connection with the vehicle has ceased, it has been held that there is no coverage under these clauses. Stammer v. Kitzmiller, 1937, 226 Wis. 348, 276 N.W. 629; American Cas. Co. v. Fisher, 1942, 195 Ga. 136, 23 S.E.2d 395, 144 A.L.R. 533. Other cases, as iindicated, have held that there is no coverage under these clauses where the unloading opration has been completed and final delivery made. Coulter v. American Employers' Ins. Co., 1948, 333 Ill.App. 631, 78 N.E.2d 131; Bituminous Cas. Corp. v. American Fidelity & Cas. Co., 1959, 22 Ill.App.2d 26, 159 N.E.2d 7.
 
 
 12
 Under neither theory do we find a basis, on the undisputed facts, for bringing Mr. Pavlik and Mr. Lorenz within the coverage of the St. Paul policy. Plaintiffs contend that Mr. Pavlik and Mr. Lorenz were 'using' the truck because Mr. Shields was about to clean their dragline bucket with the water hose attached to the O'Laughlin truck. We cannot agree that this represents use of the O'Laughlin truck by Mr. Pavlik and Mr. Lorenz, as contemplated by the policy. At the time of the accident, the unloading operation had been completed and final delivery had been made. Plaintiffs deny that unloading was completed because a small residue of the mixed concrete remained in the dragline bucket. This was to be washed away. It was never contemplated that this negligible quantity of concrete would be utilized in the construction work. The concrete had come to rest in its final resting place. Hartford, as insurer of Mr. Pavlik and Mr. Lorenz, stands in no better position than they do.
 
 
 13
 The evidence supports the District Court's findings that Mr. Pavlik and Mr. Lorenz were not 'using' the truck and that delivery and unloading of the concrete had been completed prior to the accident. Mr. Pavlik and Mr. Lorenz were entitled to no coverage under the St. Paul policy on the O'Laughlin truck.
 
 
 14
 All other arguments raised by the parties have been considered, but do not alter our decision that the judgment of the District Court must be affirmed.